# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **EDWARD WORZALA, JR.,**<br><br>        **Plaintiff,**<br>vs.<br><br>**BONNER COUNTY, an Idaho municipal corporation, BONNER COUNTY SHERIFF'S DEPARTMENT, an Idaho governmental entity, DEPUTY JEREMY DEAL, an employee or agent of Bonner County, IDAHO STATE POLICE, an Idaho governmental entity, and TROOPER LESLIE LEHMAN, an employee or agent of the State of Idaho,**<br><br>        **Defendants.** | CASE NO: CV06-308-N-EJL<br><br>**MEMORANDUM ORDER** |

Plaintiff Edward Worzala, Jr. brings this lawsuit pursuant to 42 U.S.C. § 1983, which permits a private right of action against a defendant who, acting under color of state law, is alleged to have violated the plaintiff's federal constitutional or statutory rights. In his Complaint, Plaintiff alleges that Bonner County Sheriff's Deputy Jeremy Deal used excessive force, in violation of the Fourth Amendment, when arresting the Plaintiff for driving under the influence ("DUI") and eluding police officers.[1] Plaintiff also alleges that Bonner County and the Bonner County Sheriff's Department maintained a policy that resulted in improperly

---

[1] Plaintiff's Complaint only asserts a violation of the Fourth Amendment, (Pl's Compl. 3-6) and in his Response to the Motion for Summary Judgment the Plaintiff confirms that he is seeking redress only for a "violation of federal rights," (Pl.'s Resp. 8-10). Therefore, the Court need not address the Defendants' discussion of state law issues.

MEMORANDUM ORDER-Page 1

trained officers.[2] Defendants, in turn, contend they are entitled to summary judgment on the basis of qualified immunity. The Defendants' Motion for Summary Judgment is now ripe. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without a hearing.

## Discussion

### I

"The defense of qualified immunity . . . protects § 1983 defendants from liability for civil damages when performing discretionary functions, unless such conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Jackson v. City of Bremerton, 268 F.3d 646, 650 (9th Cir. 2001). When evaluating the qualified immunity defense, the Court performs a two-step analysis, which "contains both a constitutional inquiry and an immunity inquiry." Johnson v. County of Los Angeles, 340 F.3d 787, 791 (9th Cir. 2003). "For the constitutional inquiry, courts must determine this threshold issue: based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?" Id. "If there was a constitutional violation, the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Id. at 791-92.

In the first step, the Court must determine, after viewing the evidence in a light most favorable to Plaintiff, whether Deputy Deal violated Plaintiff's Fourth Amendment right to be free from excessive use of force. Id. at 792. "Under the Fourth Amendment, officers may only use such force as is 'objectively reasonable' under the circumstances." Id. Thus, the precise

---

[2] The Court previously dismissed Defendants Idaho State Police and Idaho State Police Trooper Leslie Lehman. (See Docket No. 18).

issue is not how much force was actually needed in making the arrest, but how much force a reasonable officer would perceive needing. Saucier v. Katz, 533 U.S. 194, 205 (2001). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," Graham v. Connor, 490 U.S. 386, 396 (1989), and a police officer's conduct need not be the "least intrusive means," but only need to be "within that range of conduct ... identif[ied] as reasonable." Billington v. Smith, 292 F.3d 1177, 1188-89 (9th Cir. 2002). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Johnson, 340 F.3d at 792. The determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."[3] Id.

## II

Here, the record sets forth the following chain of events. On July 8, 2004, Deputy Deal was notified of a possible DUI, heading north on state highway 95. After sighting the suspect vehicle, Deputy Deal observed the vehicle cross over the center line and fog lines; the vehicle changed lanes several times without signaling. Deputy Deal activated his overhead emergency lights to conduct a traffic stop. When the vehicle did not respond, Deputy Deal turned on his sirens in short bursts. The vehicle did not stop, and Deputy Deal asked other officers to respond to his location.

Deputy Deal paced the vehicle and determined it was traveling at 70 miles per hour in a 60 mile per hour zone. Deputy Deal turned on his siren and let it run constantly. The vehicle signaled and turned onto the Pack River Road, where Deputy Deal paced the vehicle at approximately 45 miles per hour in a 35 mile per hour zone. At this time, dispatch advised Deputy Deal that the registered owner of the vehicle was the Plaintiff, that the Plaintiff had a concealed weapons permit and that the Plaintiff's address was Pack River Road.

---

[3] Plaintiff relies heavily on an opinion handed down by the Idaho Court of Appeals. State v. Spurr, 755 P.2d 1315 (Idaho Ct. App. 1988). This Court, however, is bound by federal law as articulated by the Ninth Circuit Court of Appeals and the United States Supreme Court.

MEMORANDUM ORDER-Page 3

For some distance, Plaintiff drove the vehicle on the wrong side of the road, in the on-coming traffic lane, including around several blind corners. Proceeding over a bridge, the vehicle remained in the wrong lane of traffic, causing an on-coming car to yield. Deputy Deal then attempted to obtain the Plaintiff's attention by turning on his spotlight and moving it from side to side. He then turned off his siren and turned on this P.A., advising the Plaintiff to pull over. Deputy Deal repeated this announcement two times.

While pursuing the vehicle, Deputy Deal observed the Plaintiff reach across to the passenger side of the vehicle using his whole body. The vehicle turned into a driveway on Pack River Road, at the same address as that listed for the Plaintiff. The vehicle came to a stop and the Plaintiff exited the vehicle. Deputy Deal exited his patrol car, drew his firearm and ordered the Plaintiff to get on the ground.

The Plaintiff appeared to smile, he raised his hands as if to wave Deputy Deal off, and then he turned and moved away from Deputy Deal. Deputy Deal holstered his weapon and pursued the Plaintiff. Deputy Deal tackled the Plaintiff and took him to the ground from behind.

According to the Plaintiff, this action by Deputy Deal caused him to be thrown face down onto a crushed rock driveway, which resulted in broken teeth and facial wounds, from which he bled. (Aff. of Edward Worzala ¶ 5). A second police officer placed a knee on Plaintiff's neck and pulled Plaintiff's right arm from underneath his body and pulled it around to his back. (Id. at ¶ 6). A third police officer grabbed Plaintiff's legs at the ankles and forced Plaintiff's legs forward and upward under Plaintiff's body. (Id.).

Meanwhile, Deputy Deal pulled Plaintiff's left arm from underneath the Plaintiff's body and placed it behind Plaintiff's back. In doing so, Deputy Deal felt the Plaintiff's arm give slightly and felt Plaintiff's joint pop. Deputy Deal then placed handcuffs on the Plaintiff.

Plaintiff was searched for weapons but none were found. Plaintiff was bleeding from his mouth and nose. An ambulance was called to the scene to treat Plaintiff, and Plaintiff was transported to Bonner General Hospital. Plaintiff states that as a result of the police officers' conduct his elbow was shattered and dislocated; he has facial scarring; he has shoulder and

back problems; and he has suffered a permanent loss of limb mobility. (Aff. of Edward Worzala ¶ 6).

Deputy Deal charged the Plaintiff with Driving Under the Influence and Eluding a Police Office. Plaintiff entered pleas of guilty to both charges.

### III

The objective reasonableness of Deputy Deal's actions is dependent in part on the "[t]he type and amount of force inflicted" under the circumstances presented here. Jackson, 268 F.3d at 651. Despite numerous attempts, Plaintiff had not responded to Deputy Deal during a lengthy and dangerous car chase. Plaintiff had a permit for a concealed weapon and Deputy Deal had observed Plaintiff reaching for something during the pursuit. Upon exiting his vehicle, Plaintiff again failed to respond to Deputy Deal when he was ordered to get on the ground and instead continued to elude police by moving away from the officers.

At that point, "from the perspective of a reasonable officer on the scene" it was necessary to apprehend the Plaintiff before he could escape, draw a weapon or otherwise put others and himself in danger. Johnson, 340 F.3d at 792. The governmental interest in apprehending Plaintiff was significant. Scott v. Harris, 127 S. Ct. 1769, 1778 (2007) (explaining that "by unlawfully engaging in the reckless, high-speed flight . . . . [where] [m]ultiple police cars, with blue lights flashing and sirens blaring, had been chasing [plaintiff] for nearly 10 miles, but he ignored their warning to stop. . . .[i]t was [plaintiff] . . .who intentionally placed himself and the public in danger"). Where, as here, "the suspect poses an immediate threat to the safety of the officer or others and . . . is attempting to evade arrest by flight," a minimal intrusion on the Plaintiff's Fourth Amendment interests is justified. Johnson, 340 F.3d at 793.

Deputy Deal tackled Plaintiff and then moved Plaintiff's left arm from under Plaintiff's body to be handcuffed. After Deputy Deal felt a pop in the Plaintiff's left arm, Deputy Deal did no more than secure Plaintiff by applying the handcuffs. An ambulance was called to the scene and Plaintiff was transported to a hospital. Under theses circumstances, the force applied to take Plaintiff into custody was "objectively reasonable and cannot under any view of the

Case 2:06-cv-00308-EJL-MHW   Document 28   Filed 06/08/07   Page 6 of 7

evidence be deemed excessive." Id. (finding reasonable use of force as a matter of law under the circumstances when in an effort to take plaintiff into custody officer twisted, yanked and pulled on plaintiff who was pinned in wrecked car after a high speed chase, which rendered plaintiff a paraplegic); Jackson, 268 F.3d at 651-53 (finding reasonable use of force as a matter of law under the circumstances when officer sprayed chemical irritant on plaintiff's hair, three officers roughly pushed her to the ground to be handcuffed, placed knee in her back despite known back and shoulder injuries, fractured her fifth finger, roughly pulled her up, and subsequently placed her in a locked police car, rolled up the windows, and turned up the heat on 90-degree day).

Having determined that Deputy Deal did not violate Plaintiff's Fourth Amendment rights, the Court need not reach the immunity inquiry.[4] See Johnson, 340 F.3d at 793-94. The Motion for Summary Judgment will be granted in favor of Deputy Deal. Because neither a municipality nor a supervisor can be held liable under § 1983 where no constitutional violation has occurred, Defendants Bonner County and the Bonner County Sheriff's Department also are entitled to entry of summary judgment in their favor. See Jackson, 268 F.3d at 653-54.

**ORDER**

Based on the foregoing, and the Court being fully advised in the premises, it is **HEREBY ORDERED** that

1. Defendants' Motion for Summary Judgment (docket no. 19) is **GRANTED** and Plaintiff's Complaint is **DISMISSED**; and

2. The Motion for Extension of Time (docket no. 24) is rendered **MOOT** by this Order; and,

---

[4] However, had the Court found it necessary to determine the immunity question, it would have concluded that Deputy Deal's use of force did not violate Plaintiff's clearly established rights. See Johnson, 340 F.3d at 794 (explaining "the concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . and [the Defendant officer] reasonably could have believed that his conduct was lawful under the circumstances").

MEMORANDUM ORDER-Page 6

3. The trial date of April 8, 2008 is **VACATED** and this case is **DISMISSED** in its entirety.



DATED: **June 8, 2007**

_____
Honorable Edward L. Lodge
U. S. District Judge